UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOYCE ROWLEY | : | Case No.: 21-cv-11649-FDS |
| Plaintiff, | : | |
| v. | : | |
| CITY OF NEW BEDFORD, MASSACHUSETTS | : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO COMPEL**

**BACKGROUND**

Defendant City of New Bedford owns and operates a municipal zoo ("Buttonwood Park Zoo") which has numerous exhibits, including an elephant exhibit. The zoo staff, with the support of outside veterinarians and consultants, maintain and cares for Ruth and Emily, two geriatric Asian elephants who have lived together at Buttonwood for approximately 36 years, and are once again the subject of this litigation.

Emily is a fifty-seven (57) year old female Asian elephant who has lived in the Buttonwood Park Zoo for more than fifty years, since being moved there in 1968. Ruth is a sixty-three (63) year old female elephant who has lived at the zoo for more than 35 years since being moved there by the United States Department of Agriculture (USDA) in 1986. Both Emily and Ruth have lived at Buttonwood together for the vast majority of their lives.

Plaintiff is requesting that this Court take the extraordinary step of issuing a preliminary injunction with seven far-reaching objectives including: (1) prohibiting the Zoo from euthanizing Ruth, (2) prohibiting the Zoo staff from restricting Ruth's freedom of movement; (3) allowing the Plaintiff's chosen veterinarian to examine Ruth and ultimately take over medical care for her; (4) prohibiting the Zoo from transferring Ruth to a third-party in order to dodge litigation; (5) transfer Ruth to Plaintiff's chosen non-zoo facility; (6) prohibiting the Zoo from hindering Ruth's transportation to Plaintiff's chosen non-zoo facility; and (7) temporarily awarding custody of Ruth to the non-zoo facility.

Plaintiff is also requesting that this Court issue a motion to compel the City to allow Plaintiff around-the-clock, twenty-four-hour access to the elephants through the installation of a remote camera system, so that Plaintiff can be included in the decision-making process for the elephants' medical care and to be allowed to attend the necropsy, should one be necessary.

No injunction or other relief can or should be granted on this record.

**ARGUMENT**

I. INJUNCTION CONSIDERATIONS AND PLAINTIFF'S BURDEN OF PROOF

The Supreme Court has held that "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 195) (emphasis added; footnotes omitted)). The test governing the award of a preliminary injunction requires consideration of "(1) the movant's likelihood of success on the merits, (2) the potential for irreparable harm, (3) a balancing of the relevant equities, and (4) the effect on the public interest." Campbell Soup Co. v. Giles, 47 F.3d 467, 470 (1st Cir. 1995). The moving party's

"likelihood of success is the main bearing wall of the four-factor framework." Explorica, Inc. v. Elderhostel, Inc., No. CIV.A. 09-11719-RGS, 2010 WL 457584, at *2 (D. Mass. Feb. 1, 2010) (quoting Ross–Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir.1996). "Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." Id.; Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir.2004).

Plaintiff has fallen far short of establishing a likelihood of success on the merits of her most recent claim. Plaintiff has failed to demonstrate the likelihood that she would suffer irreparable harm without the issuance of an injunction. Plaintiff's Motion completely fails to assess the considerable risks associated with removing an elderly elephant from the supervision and care of the Zoo's trained and experienced staff with whom the elephants have had decades long relationships. Finally, the motion does not adequately consider the harm to the general public by needlessly uprooting these beloved animals from the City Zoo. As such, Plaintiff's Motion for Preliminary Injunction should be denied.

II. ROWLEY HAS FAILED TO DEMONSTRATE THAT SHE IS LIKELY TO SUCCEED ON THE MERITS OF HER CLAIMS

Plaintiff has failed to prove that Ruth and Emily receive substandard care at the Buttonwood Park Zoo. Plaintiff presents no qualified veterinary expert to support this groundless allegation. Plaintiff's prayer for injunctive relief is based on her unqualified opinion that the elephants are being harmed by the Zoo staff's negligence and mistreatment. One of the Plaintiff's main claims is that negligence and mistreatment on behalf of the Zoo staff has led to Ruth's feet being severely damaged. These claims are based on her own lay observations, guesswork and misinterpretation of the animals' clinical notes.

In fact, the record illustrates that the City's two elephants receive excellent care which meets or exceeds the USDA's Animal and Plant Health Inspection's (APHIS) regulations for animal management and care. See (Exhibit A- USDA Routine Inspection Report) and (Exhibit B – USDA Focused Inspection Report).

Plaintiff also makes several claims regarding the Zoo staff and the Zoo buildings suggesting (without any expert testimony) that they have contributed to Ruth's deteriorating foot condition. Plaintiff alleges that part of Ruth's foot has "dissolved" due to an infection left untreated by the staff and which ultimately led to sepsis osteitis, which then spread to her right foot. (Exhibit E, pg. 13). The City wholly disagrees with Plaintiff's untrained misdiagnosis and offers ample evidence that what Plaintiff is alleging is not accurate nor even possible.

Dr. Lipanovich, the Zoo's Staff Veterinarian, affirms that Ruth was never diagnosed with sepsis osteitis; that Ruth did present as having pododermatitis but that it was bio-mechanical in nature and not infectious. Further, Dr. Lipanovich opines that pododermatitis is not a contagious disease as Plaintiff is incorrectly asserting. (Exhibit F – Affidavit of Erica Lipanovich, DVM and Exhibit G – Ruth Medical Records). Dr. Lipanovich's clinical notes are supported by an experienced elephant manager and outside consultant Mike McClure, who during his May 11, 2021, visit to the Zoo, observed that in his experience pododermatitis is often seen as an age-related change in elephants with poor conformation and that in Ruth's case had likely been developing for many years as she has aged and that it has been exacerbated by changes to her gait from developing osteoarthritis (Exhibit C - Shara Rapoza Affidavit).

**Recent Zoo Improvements**

In the two years since Ms. Rowley's last attempt to wrest control of the elephants failed (Exhibit H - Decision of Judge William Young), the Zoo has continued to build upon its already excellent elephant care program:

In 2019, the Zoo added automated food dispensers; purchased a remote camera system to be used to monitor the elephants when necessary; hired Dr. Erica Lipanovich as a Staff Veterinarian with extensive experience; and brought in outside consultants to provide staff training for restricted contact and elephant foot care (Exhibit C)

In 2020, the Zoo improved the radiant heat system for the elephants; increased the testing for low temperatures; replaced and upgraded the building security; maintained the Toys for Elephants program with the Mass College of Arts; and implemented a community browse program for harvesting fresh bamboo and other browse species for the elephants (Exhibit C).

In 2021, the Zoo brought on an additional elephant keeper; began allowing the elephants overnight access to the habitats when the temperature and weather permitted; and purchased a portable digital x-ray system specifically for radiographing elephant feet (Exhibit C).  In August 2021, the Zoo also engaged specialist Dr. James Oosterhuis to examine both elephants, to instruct the staff on methods of best possible care, and to provide a thorough assessment and plan to address Ruth's feet (Exhibit D - Oosterhuis Report).

### The Oosterhuis Consultation Report – August 18, 2021

In August 2021, the Zoo asked Dr. James Oosterhuis to examine the feet of both Ruth and Emily and to provide a report detailing his recommendations for how the staff could better manage the elephants' feet going forward.  On August 9, 2021, Dr. Oosterhuis spent the day examining the feet of both elephants.  In his report, Dr. Oosterhuis found:

- Ruth's foot issue was a "severe conformational problem" due to being pigeon toed.  This opinion is shared by Dr. Lipanovich and has been documented in S.M. Mikota and M. Fowler's *Biology, Medicine & Surgery of Elephants*, Chapter 20 ["Elephants with conformational faults tend to develop foot problems as they begin to age (30-40 years) because they walk in such a manner that unequal weight is distributed to unaffected limbs."]  Plaintiff has incorrectly asserted, without any medical support, that Ruth's foot problems were caused by poor living conditions. (Exhibit D).

- The inside of the elephant quarters consisted of soft sand substrate, in direct contradiction to Plaintiff's claim that the floor of the elephant quarters consisted of a "hard substrate consisting of sand and dirt". (Exhibit E, pg. 5).

- The Zoo's elephant care staff were worthy of commendation for "their dedication to give Ruth and Emily the best possible care …. both physical and mental." (Exhibit C)

### United States Department of Agriculture Inspections

The United States Department of Agriculture visited and inspected the Buttonwood Park Zoo twice in the past six months. USDA Animal Care inspectors conduct routine, unannounced inspections of all entities licensed/registered under the Animal Welfare Act.  They also conduct focused inspections based upon public complaints or allegations of unlicensed activities.

On July 21, 2021, the USDA performed an unannounced "routine inspection" of the Zoo. All of the animals within the Zoo were inspected, including the two Asian elephants, Ruth and Emily. The result of the routine inspection was that the animals and all of the facilities inspected were fully in compliance with USDA regulations (Exhibit A).

On October 27, 2021, specially trained USDA personnel arrived to perform a "focused" inspection of the elephants. The inspectors focused only on Ruth and Emily and their facilities. The result of the focused inspection was a determination that the elephant care and elephant facilities were fully compliant with USDA regulations (Exhibit B).

### III. ROWLEY HAS FAILED TO DEMONSTRATE THAT SHE IS LIKELY TO SUFFER IRRERPARABLE HARM

In this circuit, the "traditional test" for preliminary injunctions is applied in Endangered Species Act ("ESA") cases, with no modification of the required proof of potential irreparable harm. Animal Welfare Institute, et al., v. Martin, et al., 623 F.3d 19, 27 (1st. Cir 2010). In the context of ESA cases, a plaintiff must show that the potential for irreparable harm is separate from the harm that is "inherent in a procedural violation of the ESA's . . . requirements." Water Keeper Alliance, et al., v. United States Department of Defense, et al., 271 F.3d 21, 34 (1st. Cir. 2001).

Plaintiff has not alleged facts sufficient to establish that she has suffered (or that she will suffer) any harm – and certainly not irreparable harm - if the myriad restrictions requested in the injunctive request are not granted; chief among them relieving the Zoo staff of their medical supervision of the elephants. Plaintiff alleges that she "suffers and continues to suffer actual injuries from knowing that Ruth and Emily are harmed by Defendant's negligence and mistreatment" and that she "is harmed emotionally, spiritually, and aesthetically." (Exhibit E, pg.

22). Plaintiff's unsubstantiated claims of negligence and mistreatment and the allegations of her own claimed distress and illness are without support and simply fall flat when challenged with the inspection reports and affidavits contained herein. Since Plaintiff has not presented evidence to explain how she (or the elephants) will be harmed in any way by allowing the Zoo staff to continue their professional supervision of the elephants, a preliminary injunction should not be granted before there is a full hearing on the merits.

### IV. PLAINTIFF HAS FAILED TO SHOW THAT THE ISSUANCE OF AN INJUNCTION WOULD NOT BE OUTWEIGHED BY THE RISK TO RUTH AND THE HARM TO THE CITY OF NEW BEDFORD.

The issuance of an injunction which called for the removal / relocation of Ruth from the care and custody of the Zoo's trained staff and her longtime companion Emily would needlessly place Ruth at risk and pose an enormous burden upon Ruth, Emily and the City. In order to issue a preliminary injunction, the court must determine whether the issuance of an injunction will "burden the defendants less than denying an injunction would burden the plaintiffs." Food & Water Watch, Inc. v. U.S. Army Corps of Engineers, 570 F. Supp. 2d 177, 194 (D. Mass. 2008).

The risk in allowing the Plaintiff's desired injunctive relief is significant. Plaintiff would have this Court release Ruth to an unregulated non-zoo facility, leaving her outside the scope of USDA supervision and protection that she enjoys at Buttonwood.

More significantly, Ruth has been a treasured asset of the City since 1986, when the USDA placed her in the care of the Zoo. In 2019, during its 125th anniversary, the Zoo welcomed a record 151,000 visitors. The elephants are an integral and longstanding cornerstone of the Zoo's success. The adverse impact upon the City and the general public associated with the removal of Ruth would be substantial. The USDA, the governing body with a mandate to

ensure that zoos are operating safely and in the best interests of the animals, gave the Buttonwood Park Zoo two clean bills of health in the last six months.  After a three day trial, Judge Young made a similar determination when he issued a 35 page decision on the issue in 2019.  To remove an elderly elephant from a clean, safe environment and to place her into the hands of an untrained zealot would pose a substantial risk to Ruth's health and safety.

## V. PUBLIC INTEREST

The public interest also favors denying Plaintiff's requested injunctions.  The Zoo offers 275 education programs, many of which involve the study of the elephants and issues surrounding elephant conservation. Ruth and Emily have lived together at Buttonwood Zoo for more than thirty-five years. With their investments in personnel, trainings, specialists and infrastructure, the City and the Zoo have shown a tremendous commitment to the elephants. Ruth and Emily are a beloved and cherished part of the City of New Bedford and a point of pride for the zoo staff which cares diligently cares for them.

Since Ruth has been an important part of the zoo community since 1986; because the Zoo just two years ago set a record for visitations and because families have been visiting Ruth and Emily for multiple generations; and since much of the zoo programming relates to the elephants, the public interest would be promoted by keeping the elephants at the Buttonwood Park Zoo and denying the Plaintiff's crass attempt to relocate them to a non-zoo and therefore unregulated facility.

## VI. OPPOSITION TO MOTION TO COMPEL

The City also opposes the Plaintiff's motion to compel the Zoo to provide her with twenty-four-hour access to the elephants via a remote camera system; immediate notification of any change of circumstance for both elephants; and access to the necropsy, should one be needed. The Plaintiff can enjoy the same visitation rights as the thousands of other patrons and visit the Zoo during normal operation times. Plaintiff has provided no evidence to support a need for her to watch the elephants at all hours of the day and night.

The City is likewise opposed and is under no obligation to adjust its working procedures to "immediately" notify Plaintiff whenever there is an undefined "sudden change of circumstances." Plaintiff is not trained nor licensed for animal husbandry in any respect. The City would only be harming itself (and potentially the elephants) by including an untrained Ms. Rowley in the decision-making process for the elephants' health. Lastly, the City is strongly opposed to Plaintiff's perverse demand to be included in the elephant necropsy, should one be necessary. This demand is a cynical attempt to interfere with a serious and somber medical procedure that carries absolutely no value to the Plaintiff and would set a dangerous precedent.

## Conclusion

For the reasons set forth above which are supported by Judge Young's 2019 Decision and the substantial record of exhibits attached to this Opposition, the Defendant respectfully asks that all of Plaintiff's request for injunctive relief and to compel be denied.

Respectfully submitted,

The Defendant City of New Bedford
By its attorneys,


__s/__John A. Markey_____
JOHN A. MARKEY, JR., ESQUIRE
Markey & Walsh, LLC
50 Homers Wharf
New Bedford, MA 02740
(508) 993-9711
 BBO # 633540
jmarkey@msmw-law.com



__s/__Kreg R. Espinola_____
KREG R. ESPINOLA, ESQUIRE
Assistant City Solicitor
City of New Bedford
133 William Street
New Bedford, MA  02740
(508) 979-1460
BBO # 649389


Dated: January 20, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of January, 2022, the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing has been served by regular U.S. Mail upon: Joyce Rowley and The Friends of Ruth and Emily at Post Office Box 50215, New Bedford, MA 02745